Slip Op. 03-167

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| DUPONT TEIJIN FILMS USA, LP, | : | |
| MITSUBISHI POLYESTER FILM OF | : | |
| AMERICA, LLC, and | : | |
| TORAY PLASTICS (AMERICA), INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Consol. Court No. 02-00463 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| POLYPLEX CORPORATION LIMITED, | : | |
| | : | |
| Defendant-Intervenor. | : | |
| | : | |

[ITA's antidumping duty determination sustained in part, remanded in part; Defendant-Intervenor's motion to supplement the record and amend memorandum of law denied.]

Dated: December 17, 2003

Wilmer, Cutler & Pickering (John D. Greenwald, Ronald I. Meltzer, and Lynn M. Fischer) for plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Paul D. Kovac), Scott D. McBride, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Coudert Brothers LLP (Kay C. Georgi and Mark P. Lunn) for defendant-intervenor.

## OPINION

**RESTANI, Chief Judge:**

This matter is before the court following remand in <u>Dupont Teijin Films USA, LP v. United States</u>, 273 F. Supp. 2d 1347 (Ct. Int'l Trade 2003) ("<u>Dupont Teijin I</u>"). In its <u>Final Results of Redetermination Pursuant to Court Remand</u> [hereinafter <u>Remand Determination</u>], the Department of Commerce ("Commerce" or "the Department") determined to include Defendant-Intervenor Polyplex Corporation Limited ("Polyplex") in the antidumping duty order on polyethylene terephthalate film, sheet, and strip ("PET film") from India because its weighted-average dumping margin was greater than <u>de minimis</u>. Polyplex and Dupont Teijin Films USA, LP, Mitsubishi Polyester Film of America, LLC, and Toray Plastics (America), Inc. ("Plaintiffs"), domestic producers of PET film and petitioners in the underlying investigation, now raise various challenges to the <u>Remand Determination</u>. Polyplex has also filed a motion to supplement the record and to amend its memorandum of law in this matter in light of Commerce's recent request for comments on Section 201 duties.

### Jurisdiction & Standard of Review

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000). The court will uphold Commerce's determination in an antidumping duty investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(I) (2000).

**Factual & Procedural Background**

In Dupont Teijin I, the court reviewed Commerce's final determination in the antidumping duty investigation, which found that PET film from India is being sold, or is likely to be sold, in the United States at less than fair value ("LTFV"). 273 F. Supp. 2d at 1350; see Polyethylene Terephthalate Film, Sheet, and Strip From India, 67 Fed. Reg. 34,899 (Dep't Commerce May 16, 2002) [hereinafter Final Determination]. Commerce calculated Polyplex's weighted-average dumping margin at 10.34 percent, but the Department "adjusted the antidumping duty cash deposits for the export subsidies found in the companion countervailing investigation rather than adjusting net U.S. price." Final Determ., 67 Fed. Reg. at 34,900–01 & n.2 (citation omitted). Based on its zero cash deposit rate, Commerce excluded Polyplex from its affirmative dumping determination on PET film from India and the resulting antidumping duty order. Id. at 34,901; Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 67 Fed. Reg. 44,175, 44,176 n.2 (Dep't Commerce July 1, 2002) [hereinafter Amended Final Determination].

In reviewing this action, the court held that Commerce's Final Determination was not in accordance with law, because an exporter with a dumping margin greater than two percent must be included in an affirmative final determination of sales at LTFV regardless of its cash deposit rate. Dupont Teijin I, 273 F. Supp. 2d at 1352. The court remanded the case to Commerce with instructions that its exclusion of Polyplex could only be based on a de minimis dumping margin as a result of adjustments to Polyplex's U.S. price pursuant to 19 U.S.C. § 1677a(c)(1)(C) (2000). See id. & n.11. The court noted that the real issue here is whether Commerce could reasonably interpret the statute, which requires Commerce to increase Polyplex's export price by

"the amount of any <u>countervailing duty imposed</u> on the <u>subject merchandise</u> . . . to offset an export subsidy," to apply in situations like the present where <u>countervailable</u> export subsidies are found in a companion countervailing duty investigation, but where duties have not yet been assessed after an administrative review.[1] <u>Id.</u> n.11 (quoting 19 U.S.C. § 1677a(c)(1)(C) (emphasis added)). Because the Department failed to make any adjustments to Polyplex's U.S. price in the <u>Final Determination</u>, but rather based its exclusion of Polyplex on its zero cash deposit rate despite a dumping margin above <u>de minimis</u> levels, the court ordered Commerce to "calculate Polyplex's dumping margin after making the adjustments to export price required by 19 U.S.C. § 1677a and Commerce's reasonable interpretations thereof." <u>Id.</u> at 1352. The court instructed that, "[i]f Commerce continues to calculate a dumping margin of 10.34 percent for Polyplex, Polyplex must be subject to the antidumping duty order, whether or not it is given a cash deposit rate of zero because of <u>expected</u> offsetting countervailing duties." Id. at 1352–53.

In its <u>Remand Determination</u>, after providing notice and an opportunity for comment, Commerce set forth its interpretation of the disputed phrase "countervailing duty imposed" in the context of companion antidumping and countervailing duty investigations. Although the Department normally interprets the term "imposed" to require an adjustment to export price only following the actual assessment of countervailing duties following an administrative review, in

---

[1] The court explained the basic economic theory behind the adjustments mandated by § 1677a(c)(1)(C) in <u>Dupont Teijin I</u>, 273 F. Supp. 2d at 1349 n.4. Essentially, this provision presumes that export subsidies contribute to the lower-priced sales of subject merchandise in the U.S. market. <u>Final Determ.</u>, 67 Fed. Reg. at 34,900–01. In this case, the countervailing duty investigation resulted in a margin of 18.66 percent for Polyplex, which is greater than its 10.34 percent dumping margin. <u>Id.</u> at 34,901. Thus, the issue in <u>Dupont Teijin I</u> was whether Commerce's exclusion of Polyplex based on its extension of § 1677a(c)(1)(C)'s basic economic theory to the calculation of antidumping duty cash deposits, without adjusting the producer/exporter's U.S. price, was appropriate.

parallel antidumping and countervailing duty investigations, "Commerce considers countervailing duties to be imposed upon the issuance of a countervailing duty order." Remand Determ. at 3–4. Such an order "directs customs officers to assess a countervailing duty." Id. at 7 (quoting 19 U.S.C. § 1671e(a)). Commerce explains that, if a countervailing duty order has not issued prior to its final determination in an antidumping duty investigation, Commerce will adjust the producer's cash deposits on future entries "to prevent assessment of both antidumping and countervailing duties to compensate for the same cause of unfairly priced imports." Id. at 8.

In applying its statutory interpretation to the facts of this case, Commerce explained that, because Polyplex's exports were not subject to a countervailing duty order at the time Commerce issued its Final Determination, countervailing duties had not been "imposed" on the subject merchandise, and, therefore, an increase in Polyplex's U.S. price was not permitted. Id. at 4. Accordingly, Commerce determined to include Polyplex in the antidumping duty order, but chose to account for the countervailable export subsidies in its cash deposit instructions to customs officials in order to prevent the double assessment of duties. See id. at 8. This action followed.

**Discussion**

The parties raise several challenges to the Department's Remand Determination. While Plaintiffs support Commerce's decision to include Polyplex in the antidumping duty order, they claim that the Department's new interpretation of § 1677a(c)(1)(C) is inconsistent with the plain language of the statute and the court's decision in Serampore Industries v. United States, 11 CIT 866, 871–73, 675 F. Supp. 1354, 1359–60 (1987), which upheld as "sufficiently reasonable" Commerce's interpretation of "imposed" to include countervailing duties only when they are

"actually imposed" or "assessed."[2] Plaintiffs argue, however, that the court should affirm the

Remand Determination without reviewing the Department's new statutory interpretation because,

in Plaintiffs' view, Commerce did not apply it in calculating Polyplex's dumping margin.  In

response to Plaintiffs' claims, both Polyplex and Commerce argue that Commerce's

interpretation of the statute is ripe for review and not precluded by Serampore.

Nevertheless, Polyplex claims that the Department's new interpretation of §

1677a(c)(1)(C) is not in accordance with the court's remand order[3] and is unreasonable in light of

the statute's underlying purpose.[4] Polyplex offers what it argues is a better interpretation of the

---

[2] Plaintiffs also challenge the Department's refusal to conduct an administrative review of Polyplex's sales that were erroneously excluded from the July 1, 2002 antidumping duty order. Because Commerce's Remand Determination will apply retroactively to include Polyplex in the original order, Plaintiffs argue that their request for an administrative review on July 31, 2003, was timely and should have been granted.  See 19 C.F.R. § 351.213(b)(1) (2003) (providing that interested parties may request an administrative review of individual exporters or producers covered by an antidumping duty order each year during the anniversary month of the order's publication).  The court is without jurisdiction to hear this claim, because the Department's decision not to conduct an administrative review is not one of the determinations under review in this action.

[3] Polyplex urges that Commerce has not followed the instructions of the court in Dupont Teijin I in refusing to adjust Polyplex's U.S. price.  The court rejects Polyplex's suggestion that the court in Dupont Teijin I "had a reasonable expectation that Commerce [would] reiterate the interpretation it had carefully explained in its Additional Brief."  Polyplex Br. at 8.  To the contrary, the court stated that, on remand, Commerce was free to set forth a new interpretation of the statute, after providing notice and an opportunity to comment to the parties, so long as the interpretation is reasonable in light of the statute's express terms.  Dupont Teijin I, 273 F. Supp. 2d at 1352 & n.11; see infra n.7 (rejecting the notion that the Department is bound by previous interpretations of the statute as set forth in prior antidumping duty determinations and previous briefs to the court in this action).

[4] On September 5, 2003, Polyplex filed a motion to supplement the record and amend its memorandum of law in objection to the Remand Determination in light of Commerce's unrelated request for comments on the treatment of Section 201 duties and countervailing duties in antidumping proceedings.  See Treatment of Section 201 Duties and Countervailing Duties, 68

(continued...)

statute that is consistent with both the legislative purpose and the U.S.'s international

obligations.[5]  In the alternative, Polyplex argues that, even if the court upholds the Department's

interpretation of the statute, an adjustment to its dumping margin was required here because the

countervailing duty order was issued on the same day as the amended final dumping

determination.[6]

In reviewing Plaintiffs' claims, the court finds that the Department's new interpretation is

---

[4](...continued)
Fed. Reg. 53,104 (Dep't Commerce Sept. 9, 2003).  The motion is denied.  Polyplex has failed to justify the court's consideration of matters outside the administrative record on incompleteness or any other ground.  See F.lli De Cecco di Filippo Fara San Marino S.p.A. v. United States, 21 CIT 1124, 1126, 980 F. Supp. 485, 487 (1997) ("A court will only consider matters outside of the administrative record when there has been a 'strong showing of bad faith or improper behavior on the part of the officials who made the determination' or when a party demonstrates that there is a 'reasonable basis to believe the administrative record is incomplete.'").  Further, the Federal Register notice was not considered by the agency in making its Remand Determination and has no bearing on the court's resolution of the present dispute.

[5] "A better reading of the provision . . . would require an upward adjustment to export price and constructed export price in an antidumping investigation (or subsequent review) for CVD duties imposed during a companion CVD investigation or in a prior CVD investigation (as assessed in a subsequent review)."  Polyplex Br. at 20.  The court finds that, because Commerce prevents the assessment of double duties by adjusting Polyplex's cash deposit on future entries, the Department's new interpretation does not run afoul of the U.S.'s international obligations, despite Polyplex's arguments to the contrary.  Article VI.5 of the General Agreement on Tariffs and Trade specifically prohibits only the assessment of both antidumping and countervailing duties to compensate for the same cause of unfairly priced imports.  The court also notes that Polyplex's proffered reading still does not resolve the ambiguity as to what "imposed" means in the context of an investigation, although Polyplex's position seems to be that, in the context of an investigation, countervailing duties are "imposed" simply by virtue of the Department's affirmative finding of countervailable subsidies.

[6] Polyplex also argues, for the first time, that the Department erred as a matter of law in aligning the final countervailing duty determination with the final antidumping duty determination under 19 C.F.R. § 351.210 (2003), because Plaintiffs' request for realignment was untimely filed under Commerce regulations.  The court declines to consider this issue.  Polyplex did not challenge this decision before Commerce and thus did not exhaust its administrative remedies.

ripe for review because Commerce did in fact employ it in declining to make an adjustment to

Polyplex's U.S. price and subjecting Polyplex to the antidumping duty order. Similarly, the court

rejects Plaintiffs' argument that the agency is bound by the previous interpretation of "imposed"

that was upheld in Serampore. "[I]t is well settled that an agency may change its interpretation of

an underlying statutory provision even absent any alteration in that provision, so long as the

reason for the change is explained and the change does not conflict with the underlying statute."

Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs, 345 F.3d 1334, 1353 (Fed. Cir. 2003).

In its Remand Determination, Commerce explained that, prior to this court's decision in Dupont

Teijin I, its practice was to reduce the percentage antidumping margin by the export subsidy rate

calculated in a concurrent countervailing duty investigation in its cash deposit instructions sent to

Customs, rather than increasing U.S. price under § 1677a. Applying this methodology in its

Final Determination, the Department excluded Polyplex from the antidumping order on PET film

from India based on its zero cash deposit rate, despite a dumping margin of 10.34 percent. The

court struck down this action in Dupont Teijin I and instructed the Department to "calculate

Polyplex's dumping margin after making the adjustments to export price required by 19 U.S.C. §

1677a and Commerce's reasonable interpretations thereof." 273 F. Supp. 2d at 1352. The court

stated that Commerce was free to arrive at a new interpretation of that statutory provision in the

light of the unique circumstances of this case—the first in which the Department has found that a

respondent received a larger amount of countervailable export subsidies than the amount of

dumping calculated in the antidumping investigation—so long as the interpretation was

supported by a "reasoned analysis." Id. at 1353 n.11. Commerce's Remand Determination does

provide a reasoned analysis for its new interpretation of the statute and, accordingly, the court

concludes that Commerce has adequately explained the rationale for its definitional change. As such, the court rejects Plaintiffs' assertion that the Department is precluded from making adjustments to producers' U.S. price as a result of parallel antidumping and countervailing duty investigations.[7]

As discussed in Dupont Teijin I, the court affords Chevron deference to Commerce's reasonable interpretation of ambiguous statutory terms articulated in the course of an antidumping determination. Id. at 1351 (citing Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1379–80 (Fed. Cir. 2001)); see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984). The statute at issue instructs Commerce to increase the price used to establish a foreign producer's export price or constructed export price by "the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy." 19 U.S.C. § 1677a(c)(1)(C). Because the statute is silent or ambiguous with respect to the meaning of "imposed," see Serampore, 11 CIT at 871, 675 F. Supp. at 1358, the court must decide whether the Department's interpretation of the statute allowing an upward adjustment to U.S. price upon the issuance of a countervailing duty order, but before any duties are actually assessed after an administrative review,[8] is permissible. The

---

[7] Similarly, the court rejects Polyplex's claim that the Department is bound by previous interpretations of the statute that it has expressed at various stages of these proceedings. Although Commerce has indeed changed course several times on the meaning of "countervailing duty imposed" in the context of concurrent antidumping and countervailing duty investigations, the Department is free to do so as explained above. This is particularly true where, as here, Commerce has had to develop and shift its interpretation in response to this court's decision in Dupont Teijin I and the parties' comments on the preliminary remand determination.

[8] In the light of the Department's recent interpretation of the statute, Polyplex questions Commerce's ability in the future to increase an exporter's U.S. price following the actual

(continued...)

court concludes that it is.

"Part I" of the statute is entitled "IMPOSITION OF COUNTERVAILING DUTIES" and governs, among other things, the procedures for initiating and conducting countervailing duty investigations and the issuance of countervailing duty orders following affirmative determinations by the Department and the U.S. International Trade Commission ("ITC"). See 19 U.S.C. §§ 1671–1671h (2000). Section 1671 states the general rule that, after such affirmative determinations by both agencies, "there shall be imposed upon such merchandise a countervailing duty." Id. § 1671(a). The section does not explain how such a duty is to be "imposed." Section 1671d, which governs "Final determinations," sheds some light on this issue, stating that Commerce "shall issue a countervailing duty order" upon its affirmative finding of countervailable subsidies and the ITC's affirmative material injury determination. Id. § 1671d(c)(2). The next statutory provision, which is entitled "Assessment of duty," begins with a subsection entitled "Publication of countervailing duty order." Id. § 1671e(a). The countervailing duty order "directs customs officers to assess a countervailing duty equal to the amount of the net countervailable subsidy," describes the subject merchandise, and "requires the deposit of estimated countervailing duties pending liquidation of entries." Id. The following subsection of the "Assessment of duty" provision, entitled "Imposition of duties," brings us full circle to where Part I began, stating the general rule that entries of "merchandise subject to the

---

⁸(...continued)
assessment of duties pursuant to an administrative review. Although the Department's prior practice does not seem to be affected by the new interpretation, because the actual assessment of countervailing duties following an administrative review necessarily flows from, and is a direct result of, an affirmative countervailing duty determination and the issuance of a countervailing duty order under Part I of the statute, this issue is not ripe for the court's review.

countervailing duty order . . . shall be subject to the imposition of countervailing duties under section 1671(a)." Id. subsection (b)(1) (emphasis added). The actual assessment of countervailing duties is addressed in Part III of the statute, which governs administrative reviews of both antidumping and countervailing duty determinations. See id. §§ 1675–1676a (2000).

Based on this review of the statutory language and framework, Commerce's interpretation that a countervailing duty is "imposed on the subject merchandise under Part I" upon the issuance of a countervailing duty order is reasonable. Part I makes clear that an affirmative finding of countervailable subsidies alone does not constitute the imposition of countervailing duties because the ITC must then determine whether imports benefitting by those subsidies cause or threaten material injury to the domestic industry. See id. § 1671d(b)(1). Instead, the final result of affirmative determinations by both agencies under Part I is the Department's issuance of a countervailing duty order, which instructs customs to assess a countervailing duty. A countervailing duty order instructing customs to assess countervailing duties remains in effect until it is expressly revoked, and countervailing duties will be automatically assessed at the original cash deposit rate if an administrative review is not requested. 19 C.F.R. §§ 351.211–.212 (2003). In light of this statutory and regulatory scheme, it is reasonable for the Department to consider a countervailing duty to be "imposed" upon the issuance of the countervailing duty order.

The court must next determine whether, based on its reasonable interpretation of the statute, the Department correctly determined that Polyplex must be subject to the antidumping duty order because it dumped PET film in the United States at a margin of 10.34 percent.

Polyplex's main argument on this point[9] is that, because the revised final determination and antidumping duty order were issued on the same day as the affirmative countervailing duty determination, the Department should have increased Polyplex's U.S. price by the amount of countervailable subsidies found in the countervailing duty order. This would have resulted in a de minimis dumping margin and the exclusion of Polyplex from the order.

Polyplex's argument has weight. Notice of Commerce's determination that PET film from India is being sold, or is likely to be sold, in the United States at less than fair value was published in the Federal Register on May 16, 2002. Final Determ., 67 Fed. Reg. at 34,899. The Final Determination revealed that Polyplex's weighted-average dumping margin was 10.34 percent. Id. at 34,901 n.2. Commerce published notice of its final determination in the countervailing duty investigation on the same day. Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India, 67 Fed. Reg. 34,905 (Dep't Commerce May 16, 2002) (final). As discussed above, however, an affirmative final determination in a countervailing duty investigation does not constitute the imposition of countervailing duties. The Department reasonably considers a countervailing duty to be imposed in the context of an investigation upon the issuance of a countervailing duty order. Thus, at the time of Commerce's Final Determination in the antidumping duty investigation, no countervailing duties had been imposed

---

[9] Polyplex now argues that the Department erred as a matter of law in imposing an antidumping duty order on its entries when its cash deposit rate is zero. The court declines to revisit this issue. In its remand order, the court held that Commerce's exclusion of Polyplex from the antidumping order on PET film based on a zero cash deposit rate was not in accordance with law. Dupont Teijin I, 273 F. Supp. 2d at 1352. Accordingly, the court instructed the Department that, "[i]f Commerce continues to calculate a dumping margin of 10.34 percent, Polyplex must be subject to the antidumping duty order, whether or not it is given a cash deposit rate of zero because of expected offsetting countervailing duties." Id. at 1352–53.

according to the Department's new interpretation, and Commerce therefore argues that it properly refused to adjust Polyplex's U.S. price in the Remand Determination.

This does not end the matter here because Commerce issued an amended final determination in the antidumping investigation on the same day that the countervailing duty order issued. Amended Final Determ., 67 Fed. Reg. at 44,176; Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) from India, 67 Fed. Reg. 44,179 (Dep't Commerce July 1, 2002) (countervailing duty order). In this procedural posture, Commerce's cursory explanation that there were no countervailing duties imposed at the time of the Final Determination is inadequate. The dumping margin calculations can and do change after the issuance of a final determination. See Amended Final Determ., 67 Fed. Reg. at 44,176 (amending a respondent's dumping margin to correct for "ministerial errors"). Given Commerce's fairly routine procedure of amending final antidumping duty determinations, it is not a sufficient answer to say that the margin calculated in the Final Determination was binding. Here, the purported final determination was not truly final until the amendment issued approximately six weeks later.

Accordingly, upon remand, Commerce must explain how it will fairly and consistently apply its interpretation of "imposed" when a final determination or an amended final determination issues on the same day as a countervailing duty order on the subject merchandise due to a petitioner's alignment request.[10] Commerce's second remand determination should also

---

[10] Absent Plaintiffs' request to align the final countervailing duty determination with the final antidumping determination here, the countervailing duty order would have issued several months before the final antidumping duty determination. Accordingly, countervailing duties would have been imposed on the subject merchandise at the time of the final LTFV determination under Commerce's interpretation of the statute, and Polyplex would have been excluded from the antidumping duty order. If, upon remand, the Department continues to stand

(continued...)

analyze how the extension of proceedings on the grounds of extraordinary complication affects

the application of this new interpretation. As Polyplex points out, only petitioners and

Commerce have the power to extend a countervailing duty determination on the grounds that it is

extraordinarily complicated under 19 U.S.C. § 1671b(c)(1), and only petitioners have the power

to request an alignment of the antidumping and countervailing duty proceedings, see 19 C.F.R. §

351.210(b)(4)(I). Thus, upon remand, the Department must fully address Polyplex's concern that

petitioners could unfairly control the respondents' fate in an antidumping determination and

resulting antidumping duty order by filing an extension and/or alignment request in the

countervailing duty investigation, and how simultaneously-issued antidumping duty

determinations and countervailing duty orders are to be treated.

### Conclusion

For all of the foregoing reasons, the Remand Determination is sustained in part and

remanded in part. Commerce is to seek to restore the parties, as far as is possible, to the position

they would have been had they been able to act on the Department's new interpretation of

"imposed," and the court's determination in this matter, prior to the issuance of the Amended

---

[10](...continued)
by Polyplex's dumping margin as calculated in the original Final Determination, Commerce must provide a reasonable explanation for its failure to take the countervailable subsidies into consideration when it re-promulgated all of the dumping margins, including that of Polyplex, in the Amended Final Determination and antidumping duty order that issued on the same day as the countervailing duty order.

Final Determination.  Commerce must file its redetermination within 45 days of the entry of this

opinion, and Plaintiffs and Polyplex shall have fourteen days thereafter to file their objections.

Commerce may reply within eleven days thereafter.  SO ORDERED.


_____
Jane A. Restani
Chief Judge


DATED:  New York, New York

This 17th of December, 2003.