# United States Court of Appeals for the Federal Circuit

04-1548

DUPONT TEIJIN FILMS USA, LP,
MITSUBISHI POLYESTER FILM OF AMERICA, LLC,
and TORAY PLASTICS (AMERICA), INC.,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellee,

and

POLYPLEX CORPORATION LIMITED,

Defendant-Appellant.

Lynn M. Fischer Fox, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for plaintiffs-appellees. With her on the brief was Ronald I. Meltzer. Of counsel was John D. Greenwald.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, and Stephen C. Tosini, Trial Attorney. Of counsel on the brief were John D. McInerney, Acting Chief Counsel, Berniece A. Browne, Senior Counsel, and Scott D. McBride, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Kay C. Georgi, Coudert Brothers, LLP, of Washington, DC, argued for defendant-appellant. With her on the brief were Mark P. Lunn and John M. Gurley. Of counsel was Kristy Balsanek.

Appealed from: United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

04-1548

DUPONT TEIJIN FILMS USA, LP,
MITSUBISHI POLYESTER FILM OF AMERICA, LLC, and
TORAY PLASTICS (AMERICA), INC.,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellee,

and

POLYPLEX CORPORATION LIMITED,

Defendant-Appellant.

_____

DECIDED: May 12, 2005

_____

Before LOURIE, CLEVENGER, and PROST, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

Polyplex Corporation Limited ("Polyplex") appeals the final judgment of the United States Court of International Trade which held that the Department of Commerce ("Commerce" or "agency") correctly included Polyplex within the scope of its antidumping ("AD") duty order covering imported polyethylene terephthalate film, sheet, and strip ("PET film") from India. Because Commerce did not err in the calculation of Polyplex's dumping margin, and that margin was not <u>de minimis</u>, we affirm the decision

of the Court of International Trade sustaining the inclusion of Polyplex within the scope of Commerce's AD duty order.

I

This case has an extensive history before the agency and the Court of International Trade. Consequently, we supply a condensed history of the case. Polyplex is an Indian producer of PET film. In its final AD duty determination, Commerce found that Polyplex's film was sold, or likely to be sold, in the United States at less than fair value ("LTFV"). Commerce determined that Polyplex had a dumping margin of 10.34 percent. However, Commerce adjusted Polyplex's cash deposit rate to account for expected countervailable export subsidies calculated in a concurrent countervailing ("CV") duty investigation so that Polyplex would not be assessed double duties. The cash deposit rate was reduced to zero by this offset. Commerce thus found that, in essence, Polyplex should not be found to be dumping and should be excluded from the AD duty order. See Polyethylene Terephthalate Film, Sheet, and Strip from India, 67 Fed. Reg. 34,899, 34,901 (May 16, 2002) ("Final Determination").

This determination was reviewed by the Court of International Trade upon motion for judgment on the agency record brought by Dupont Teijin Films USA, LP and other petitioners in the underlying AD investigation. Dupont Teijin Films USA, LP v. United States, 273 F. Supp. 2d 1347, 1348 (Ct. Int'l Trade 2003) ("Dupont I"). The parties did not dispute the zero deposit rate, only whether Polyplex should be included in the AD duty order which could potentially lead to future reviews and assessments of AD duties if Polyplex's circumstances changed. The court requested additional briefing from the

parties to aid in the determination of what the term "imposed" in 19 U.S.C. § 1677a(c)(1)(C) required.

In its supplemental briefing to the Court of International Trade, the government stated that "for the purposes of § 1677a(c)(1)(C), a reasonable interpretation is that a countervailing duty is imposed upon the issuance of a countervailing duty order." Defendant's Additional Brief Pursuant to Court Order at 9-10. The government then admitted in its brief that it did not increase Polyplex's export price or constructed export price by the countervailing duty and therefore did not account for these duties in the calculation of the dumping margin. Id. at 11. But the government contended that the adjustment of the cash deposit rate by the countervailing duties in essence meant the same thing as a zero dumping margin, primarily that Polyplex was not dumping and the AD duty order should not apply to Polyplex.

Commerce asserted that it had authority to factor into the cash deposit rate the effect of the countervailing duty order prior to its issuance, and based on the zero cash deposit rate calculated, it could thus exclude an importer from the scope of the dumping order. This portion of the government's argument was rejected by the Court of International Trade in Dupont I, which held, as a matter of plain statutory meaning, that exclusion from the scope of an AD duty order can only be granted to a party who has a dumping margin of less than two percent, or a de minimis dumping margin. Recognizing as error the exclusion of Polyplex based on the cash deposit rate rather than the dumping margin, the Court of International Trade remanded the case to Commerce instructing it to apply 19 U.S.C. § 1677a to calculate Polyplex's dumping margin after adjusting the export price by any countervailing duties that had been

"imposed," as Commerce interpreted it. 273 F. Supp. 2d at 1352. The court also instructed that "[i]f Commerce continues to calculate a dumping margin of 10.34 percent for Polyplex, Polyplex must be subject to the antidumping duty order, whether or not it is given a cash deposit rate of zero because of <u>expected</u> offsetting countervailing duties." <u>Id.</u> at 1352-53.

On remand, in its <u>Final Results of Redetermination Pursuant to Court Remand</u> (Aug. 11, 2003) ("<u>Remand Determination</u>"), Commerce stated that it interpreted 19 U.S.C. § 1677a(c)(1)(C) to require an increase in the export price by the CV duties imposed under a CV duty order that has issued. <u>Remand Determination</u> at 8, <u>available at</u> http://ia.ita.doc.gov/remands/03-79.pdf. Under this interpretation, the original dumping margin for Polyplex, 10.34 percent, was correctly calculated, and Polyplex was deemed within the scope of the AD duty order. Commerce did however retain the zero cash deposit rate, by using the impending CV duty offset for the purpose of setting Polyplex's cash deposit rate in order to avoid the collection of both the CV duty and the AD duty. Polyplex then appealed to the Court of International Trade.

In <u>Dupont Teijin Films USA, LP v. United States</u>, 297 F. Supp. 2d 1367 (Ct. Int'l Trade 2003) ("<u>Dupont II</u>"), the Court of International Trade sustained the remand determination by Commerce in part by finding Commerce's interpretation reasonable under a <u>Chevron</u> analysis, but remanded with instructions that Commerce consider the broader implications of the application of the annunciated interpretation of "imposed." Under this interpretation, because Polyplex's exports were not subject to a CV duty order when the AD duty order was issued, Polyplex would be subject to the AD duty order because the CV duties were not of record at the time of the final determination.

However, for the second remand, Commerce was instructed to consider "how it will fairly and consistently apply its interpretation of 'imposed' when a final determination or an amended final determination issues on the same day as a countervailing duty order on the subject merchandise." Id. at 1374. Commerce was also instructed to consider if petitioners in antidumping cases could "game" the outcome of concurrent AD and CV duty investigations and effectively prevent CV duties from being "imposed" before the AD duty order issued by aligning the AD and CV duty investigations.

In its Second Remand Determination (Mar. 3, 2004), Commerce addressed the ability of petitioners to manipulate AD margins by either requesting or not requesting alignment of the AD and CV duty investigations and found that petitioners did not manipulate Polyplex's AD margin in this case. Second Remand Determination at 5-6, available at http://ia.ita.doc.gov/remands/03-167.pdf. Commerce also disposed of the concern that "imposed" as interpreted may not be consistently applied to AD and CV duty determinations issued on the same day by explaining that the final determinations are based on the information in the record at the time of the determination and it "likely" would adjust U.S. prices if the AD determination issues on the same day as the CV duty order. In this case, Commerce said that the CV duty order was published after the final AD determination and as a result the CV duty order should not be considered part of the record. The Final Determination was merely amended to correct a ministerial error and republished as corrected on the same day as the CV duty order. Commerce found that since it could not amend a final determination to adjust Polyplex's export prices under the ministerial error provision, Polyplex would have been in the same position it is in

now even if Polyplex would have been aware of the interpretation of "imposed" as now used by Commerce.

The Second Remand Determination by Commerce was also reviewed by the Court of International Trade. Dupont Teijin Films USA, LP v. United States, No. 02-00463, 2004 WL 1368838 (Ct. Int'l Trade June 18, 2004) ("Dupont III"). Polyplex argued before the court that Commerce had failed to comply with the court's instructions to make an adjustment of the U.S. price under 19 U.S.C. § 1677a(c)(1)(C) and had not recalculated the dumping margin based on the countervailing duties imposed on the same day as the Amended Final Determination. The court recognized that "[a]bsent such an amendment, Polyplex's dumping margin of 10.34 percent would mandate its inclusion in the antidumping duty order." Id. at *1. The Court of International Trade found that Commerce had complied with its instructions by clarifying when duties were "imposed" for the purposes of section 1677a(c)(1)(C) and consistently applying this definition to Polyplex when calculating the dumping margin. The court also accepted Commerce's explanation that the risk is slight that petitioners will manipulate AD margins by choosing to align AD and CV duty proceedings. The court also found that including Polyplex in the AD order is consistent with the statute and not a departure from the Court of International Trade's previous decisions in this case. Because the final AD order issued prior to the CV duty order, no countervailing duties had been imposed on Polyplex at the time the dumping margin was calculated in the final determination. The Court of International Trade sustained the 10.34 percent dumping margin and the inclusion of Polyplex in the AD order. Polyplex now appeals the decision of the Court of International Trade. We have jurisdiction over an appeal from a

final decision of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (2000).

## II

A decision of the Court of International Trade reviewing a final antidumping determination by Commerce is reviewed by this court by reapplying the standard of review the trial court applied when it reviewed Commerce's final determination. Mitsubishi Heavy Indus., Ltd. v. United States, 275 F.3d 1056, 1060 (Fed. Cir. 2001). Commerce's determination should therefore be upheld unless it is unsupported by substantial evidence on the record or is not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); Micron Tech. Inc. v. United States, 117 F.3d 1386, 1393 (Fed. Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is not necessary that there could be only one conclusion; even if two inconsistent conclusions could have been drawn, the determination could still be supported by substantial evidence. See Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), governs judicial review of Commerce's interpretation of the relevant statutory provisions. It is first important to determine if "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based

on a permissible construction of the statute." Id. at 843. If the agency's interpretation is reasonable, albeit not the only or even preferred reasonable interpretation, it must withstand judicial scrutiny. See NSK Ltd. v. United States, 115 F.3d 965, 973 (Fed. Cir. 1997); Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994).

Moreover, "[i]n antidumping cases, we accord substantial deference to Commerce's statutory interpretation, as the International Trade Administration is the 'master' of the antidumping laws." Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1995).

III

Polyplex primarily argues that the first determination by Commerce to exclude it from the order was correct because Commerce had the discretion to find that the concurrent AD and CV duty investigations required the exclusion of Polyplex from the AD order because CV duties were expected which would entirely offset the AD duties. Polyplex frames the initial determination by Commerce as finding that a combination of AD and CV duty proceedings gives Commerce the authority to exclude a party from the scope of an AD order based on a discretionary zero deposit rate calculated using an offset from expected CV duties, even if the party has a dumping margin greater than de minimis. Polyplex thus renews the argument it brought before the Court of International Trade, contending that the initial determination by Commerce warranted Chevron deference. Polyplex argues that the Court of International Trade erred in holding that a cash deposit rate of zero was not a proper basis on which to exclude a party from an AD order under 19 U.S.C. § 1673d(a)(4).

In its initial decision, the Court of International Trade looked to the plain meaning of the language in the relevant statutes and determined that the law was clear that Commerce could exclude a party from an AD order only if the producer's dumping margin is less than two percent or <u>de minimis</u>. <u>Dupont I</u>, 273 F. Supp. 2d at 1351. Otherwise, the party must be included in an affirmative final determination of sales at LTFV. <u>Id.</u> The court looked to the statute which instructed that when making antidumping determinations, Commerce "shall disregard any weighted average dumping margin that is de minimis." 19 U.S.C. § 1673d(a)(4). A margin is considered <u>de minimis</u> if it is "less than 2 percent ad valorem or the equivalent specific rate for the subject merchandise." § 1673b(b)(3). The court therefore determined that

> producers with <u>de minimis</u> dumping margins must be excluded from an antidumping duty order. <u>See id.</u> § 1673d(a)(4); 19 C.F.R. § 351.204(e)(1) (explaining that a producer with a <u>de minimis</u> dumping margin will be excluded from an affirmative final determination); Uruguay Round Agreements Act, SAA, H.R. Doc. No. 103-316 at 844 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040 ("Exporters or producers with <u>de minimis</u> margins will be excluded from any affirmative determination.").

<u>Dupont I</u>, 273 F. Supp. 2d at 1351-52. The court correctly concluded that <u>Chevron</u> deference was not warranted on this point.

Relying on <u>Auto Telecom Co. v. United States</u>, 765 F. Supp. 1094, 1097 (Ct. Int'l Trade 1991), the Court of International Trade distinguished the inquiries of making a dumping determination and determining a cash deposit rate. <u>Dupont I</u>, 273 F. Supp. 2d at 1352. The court found that Commerce had incorrectly "collapsed these two inquires when it improperly excluded Polyplex based on a zero cash deposit rate when its dumping margin was greater than <u>de minimis</u>." <u>Id.</u> The court correctly found that "[t]here is no statutory authority to exclude an exporter because its cash deposit rate,

but not its dumping margin, is zero." Id. We find no error in the reasoning of the Court of International Trade and therefore sustain the conclusion that Commerce's decision to exclude Polyplex based on its cash deposit rate is not in accordance with law.

IV

The Court of International Trade remanded the case to Commerce, instructing the agency to interpret and apply 19 U.S.C. § 1677a to the calculation of Polyplex's dumping margin. Id. Because this section requires an adjustment to the export price by the amount of CV duties that have been imposed, the court recognized that it was imperative for Commerce to interpret the meaning of "countervailing duty imposed" in section 1677a(c)(1)(C) to properly apply this section to Polyplex. Id. at n.11. Although additional briefing on this term had been submitted at the request of the court, the issue was determined to be unripe for review because it had not been applied in Commerce's original determination because Commerce simply based Polyplex's exclusion on the adjusted cash deposit rate instead of the dumping margin. Id. The court further instructed Commerce that "[i]f Commerce continues to calculate a dumping margin of 10.34 percent for Polyplex, Polyplex must be subject to the antidumping duty order, whether or not it is given a cash deposit rate of zero because of expected offsetting countervailing duties." Id. at 1352-53.

On remand, Commerce construed the term "imposed" as used in section 1677a(c)(1)(C) to mean duties that are levied or that will be levied because Commerce has issued a CV duty order. Commerce found that "imposed" required the issuance of the order, and duties that were merely "estimated" during the investigation were not "imposed" under Commerce's interpretation of the statute. This interpretation

is consistent with Commerce's initial interpretation as used in the Final Determination because Commerce had not made any adjustments to Polyplex's U.S. price when it calculated a dumping margin of 10.34 percent; Commerce had merely adjusted the cash deposit rate to account for expected CV duties. Therefore, Commerce did not disturb the dumping margin calculated in the Final Determination on remand. Following the clear instructions from the Court of International Trade, Commerce reversed its earlier position based on the cash deposit rate and found that Polyplex's dumping margin was not de minimis which dictated including Polyplex in the AD duty order. However, Commerce maintained that notwithstanding its lack of authority to adjust the dumping margin for Polyplex until after the CV duty order actually issues, it has the discretion to harmonize the intent of the AD and CV duty statutes by setting a zero cash deposit rate in the special case where expected CV duties are anticipated by Commerce to completely offset AD duties.

Upon review, the Court of International Trade found that Commerce's interpretation of section 1677a(c)(1)(C) warranted Chevron deference and concluded that "Commerce's interpretation that a countervailing duty is 'imposed on the subject merchandise under Part I' upon the issuance of a countervailing duty order is reasonable." Dupont II, 297 F. Supp. 2d at 1373. This term has previously been deemed ambiguous by the Court of International Trade. See Serampore Indus. Pvt. Ltd. v. United States, 675 F. Supp. 1354, 1358 (Ct. Int'l Trade 1987) ("The language of the statute does not disclose the scope of the meaning Congress intended to accord the word 'imposed.'"). But even with the interpretation of the term "imposed" in hand, the Court of International Trade found that the question remained why Polyplex did not

receive the benefit of offsetting its U.S. price by the amount of countervailable subsidies found in the CV duty order that issued on the same day as the amended Final Determination. Inclusion of these offsetting subsidies would have resulted in a de minimis dumping margin and the exclusion of Polyplex from the AD order. Dupont II, 297 F. Supp. 2d at 1373. The timing of the AD and CV duty orders is therefore critical to determining the proper application of seciton 1677a(c)(1)(C) to Polyplex.

On May 16, 2002, notice of Commerce's final determination concerning PET film from India was published in the Federal Register, which included Polyplex's weighted-average dumping margin of 10.34 percent. Final Determination, 67 Fed. Reg. at 34,899. On the same day, notice of Commerce's final determination in the CV duty investigation was published. Polyethlene Terephthalate Film, Sheet, and Strip From India, 67 Fed. Reg. 34,905 (Dep't Commerce May 16, 2002). At the time of the Final Determination in the AD investigation, we find that no CV duties had been imposed because the CV duty order had yet to issue. At this point in the timeline, the calculation of Polyplex's dumping margin was correctly calculated at 10.34 percent because CV duty offsets could not be applied under Commerce's interpretation of "imposed."

Commerce then issued the amended final determination in the AD investigation, Amended Final Determination, 67 Fed. Reg. at 44,176, on the same day that the CV duty order issued, Polyethylene Terephthalate Film, Sheet, and Strip from India, 67 Fed. Reg. 44,179 (Dep't Commerce July 1, 2002). In light of the timing of this later amended determination, the Court of International Trade found that Commerce should explain why Polyplex's margin was not recalculated in the amended final determination that issued simultaneously with the CV duty order. The court thus again remanded the case

to Commerce to determine "how it will fairly and consistently apply its interpretation of 'imposed' when a final determination or an amended final determination issues on the same day as a countervailing duty order on the subject merchandise due to a petitioner's alignment request." Id. at 1374. The court also instructed Commerce to determine if alignment of AD and CV duty proceedings at the request of petitioners under 19 C.F.R. § 351.210(b)(4)(I) would affect the application of section 1677a(c)(1)(C), and if petitioners would be able to unfairly control the fate of respondents in an AD determination by controlling the timing of the issuance of a CV duty order.

V

On March 3, 2004, Commerce issued its Second Remand Determination addressing the court's concerns from Dupont II. Commerce found that it was not authorized to amend its original determination and recalculate Polyplex's dumping margin when the final determination was republished to amend ministerial errors on the same day that the CV duty order issued. Commerce maintained the position that Polyplex should be included in the AD duty order because the CV duty order had not issued at the time of the final determination of AD duties.

Commerce also addressed the court's concerns for petitioner manipulation of concurrent AD and CV duty investigations. See Second Remand Determination at 5-6. Petitioners are given, by statute, the ability to request alignment of companion AD and CV duty investigations. See 19 C.F.R. § 351.210(b)(4)(I). Even if alignment is discretionary, there is no evidence in this case that petitioners requested alignment to

manipulate the results of the proceedings because the alignment request was filed before the AD and CV duty preliminary determinations even issued.

Commerce also clarified that final determinations should be based on information in the record at the time of the determination. Second Remand Determination at 6. Here the CV duty order issued after the record closed and after the final determination of Polyplex's AD margin. This post-Final Determination CV duty order cannot be considered in calculating Polyplex's U.S. price in the dumping margin calculation. Although Commerce explained that there are limited circumstances that allow amendment of final determinations including the correction of ministerial errors or where there are unintentional errors that are based on the record, see 19 U.S.C. § 1673d(e); 19 C.F.R. § 351.224(e), these exceptions do not apply to Polyplex. In this case, the Amended Final Determination was published to correct a ministerial error in the calculation of another respondent's dumping margin. Because there were no such errors in the calculation of Polyplex's margin and the record was closed before the issuance of the CV duty order, Polyplex could not receive a recalculation of its margin in the Amended Final Determination. Although Polyplex argues that amendment to its margin could have been made following the logic of Badger-Powhatan v. United States, 633 F. Supp. 1364, 1369 (Ct. Int'l Trade 1986), we find the present case distinguishable because the calculation of the dumping margin was not made according to a "legally improper method" or upon inaccurate or erroneous facts; the CV duty order had simply not yet issued.

The Court of International Trade accepted the entirety of Commerce's reasoning in its Second Remand Determination. Finding that Congress has granted domestic

industry a method to legitimately align concurrent AD and CV duty proceedings under 19 U.S.C. § 1671d(a)(1), the court agreed with Commerce that the risk of manipulation by petitioners is slight and unlikely to arise in the majority of simultaneous AD and CV duty investigations because it is an unusual case where the countervailed subsidies fully account for antidumping duties. In such cases, Commerce has maintained that it will continue to reduce cash deposits by accounting for CV duties in order to avoid the imposition of double duties as it has done in this case by setting the cash deposit rate to zero. We agree with the Court of International Trade and defer to Commerce's reasonable solution in this type of unusual case. Although Congress has not directly spoken on this issue, Commerce's solution is in keeping with World Trade Organization obligations, which dictate that double duties should not be assessed in AD and CV duty proceedings. See Dupont II, 297 F. Supp. 2d at 1370 n.5.

VI

In sum, we sustain the Court of International Trade's holding that a zero cash deposit rate is insufficient to exclude a respondent from an AD duty order. Exclusion from an AD duty order statutorily requires a de minimis dumping margin. We also affirm Commerce's interpretation of the term "imposed" as used in section 1677a(c)(1)(C) which requires the issuance of a CV duty order before CV duties can be used to offset the export price in the calculation of the dumping margin. In this case, we find that Commerce correctly calculated Polyplex's dumping margin because the CV duty order issued after the final determination. We thus affirm Commerce's inclusion of Polyplex in the AD duty order based on its dumping margin of 10.34 percent.

AFFIRMED

04-1548                                                    15