**Slip Op. 03-102**

# UNITED STATES COURT OF INTERNATIONAL TRADE

―――――――――――――――――――――――――――――

|  |  |
|---|---|
| CEMEX, S.A., | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : Consol. Court No. 93-10-00659 |
| Defendant, | : |
| and | : |
| THE AD HOC COMMITTEE OF AZ-NM-TX-FL PRODUCERS OF GRAY PORTLAND CEMENT AND NATIONAL CEMENT COMPANY OF CALIFORNIA, | : |
| Defendant-Intervenors and Cross-Plaintiffs. | : |

―――――――――――――――――――――――――――――

[Motion to enforce judgment denied.]

Dated: August 12, 2003

Manatt, Phelps & Phillips (Irwin P. Altschuler, Jeffrey S. Neeley and Donald S. Stein) for plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director Commercial Litigation Branch, Civil Division, United States Department of Justice (David S. Silverbrand), Edward N. Maurer, Deputy Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, for defendant.

King & Spalding, LLP, (Joseph W. Dorn, Michael P. Mabile and Jeffrey M. Telep) for defendant-intervenors and cross-plaintiffs.

## OPINION

**RESTANI, Judge:**

This matter is before the court on the motion of the Ad Hoc Committee of AZ-NM-TX-FL Producers of Gray Portland Cement and National Cement Company of California (collectively "Ad Hoc") to enforce the judgment entered in this matter against Plaintiff Cemex, S.A. ("Cemex"), a Mexican exporter of gray portland cement. Ad Hoc represents domestic producers who succeeded in this matter in obtaining increases in the calculation of antidumping duties over the amount originally calculated by the Department of Commerce ("Commerce") for the second administrative review period, August 1, 1991, to July 31, 1992. See Cemex, S.A. v. United States, 20 CIT 1272 (1996), aff'd, 133 F.3d 897 (Fed. Cir. 1998). Various entries[1] were deemed liquidated as entered at rates under 60%, instead of at the antidumping duty rate sustained by the courts, which was over 106%. Cemex and the United States assert that deemed liquidation under 19 U.S.C. § 1504(d) is proper, as Customs[2] did not liquidate the entries within six months of receiving notice of the lifting of the suspension of liquidation from Commerce.

## BACKGROUND

In this case, as has happened in many others, see, e.g., NEC Solutions (America), Inc. v. United States, No. 01-00147, slip op. 03-80 at 12 n.15 (Ct. Int'l Trade July 9, 2003) ("NEC"), after the mandate of the Federal Circuit issued on March 2, 1998, no notice of the amended final

---

[1] To wit: 140 entries at Nogales, one entry at El Paso, and one entry at Los Angeles (not yet posted as liquidated)

[2] The then United States Customs Service is now known as the Bureau of Customs and Border Patrol of the Department of Homeland Security.

results was published.  However, unlike certain other matters, liquidation instructions were

promptly issued from Commerce to Customs.  The instructions were posted on Customs' internal

use only electronic bulletin board.  As indicated, Customs did not act timely, and, pursuant to

Customs Headquarters directions for the 140 Nogales entries, public bulletin notice of "no

change" or "deemed" liquidation was posted on April 6, 2001.  The one "lost" El Paso entry was

posted as a "no change" entry on March 14, 2003.  The one "lost" Los Angeles entry has not yet

been posted as a "deemed" or "no change" liquidation.[3]

Although Ad Hoc alleges it is merely pursuing its rights to have the proper competition

equalizing duties imposed, apparently it is also motivated by the Continued Dumping and

Subsidies Offset Act of 2000, Pub. L. 106-387 (19 U.S.C. § 1675(c)) ("Byrd Amendment").

Under the Byrd Amendment, producers with qualifying expenditures for a particular year may

obtain a share of the antidumping duties collected by Customs for that year.

In 2001, when the deemed liquidated duties were collected, at least one producer made  a

claim for Byrd Amendment moneys and received them.  These movants, or the producers they

represent here, did not.  Nor did they immediately object to the "no change" or "deemed"

liquidation at Nogales, which was posted publicly.[4]  There is no statutory provision for domestic

producers to "protest" a liquidation under 19 U.S.C. § 1514, as importers may.  Exactly what

measures Ad Hoc should have taken is not clear, but Cemex asserts that because liquidations are

---

[3] In the case of increases occasioned by court review, "no change" or "deemed" liquidation signals that the earlier lower rate is assessed.

[4] Ad Hoc, in fact, has sought expedited disposition of this matter in an attempt to have collection made prior to September 30, 2003, so that certain domestic producers may make claims for qualifying expenditures for this year.

final as to "all persons" if no protest is filed within ninety days of liquidation, failing to take

some action within 90 days of the Nogales liquidation terminated Ad Hoc's rights. See 19

U.S.C. §§ 1514(a) and (c).

Disposition on such a basis will not dispose of the El Paso entry, which was liquidated

less than 90 days before this action was filed, or the Los Angeles entry which remains

unliquidated. Thus, the court turns to the central deemed liquidation issue.

## DISCUSSION

Determining whether the entries are deemed liquidated involves first determining what

version of 19 U.S.C. § 1504(d) applies. If, under the applicable version, deemed liquidation

occurs if Customs does not liquidate the entries within six months of the receipt by Customs of

notice of the end of suspension of liquidation, then the court must decide if the proper notice was

given.

Ad Hoc's position that deemed liquidation is improper rests on the applicability of pre-

1993 versions of 19 U.S.C. § 1504(d). Section 1504 was originally enacted in 1978 to apply to

post April 1, 1979 entries. Customs Procedural Reform and Simplification Act of 1978, Pub. L.

No. 95-410, § 209(b), 92 Stat. 888, 905 (1978). The purpose of the provision was to give

importers finality as to their duty obligations by providing for deemed liquidation at the rate

claimed by the importers, unless actual liquidation occurred within specified time limits. See

Int'l Trading Co. v. United States, 281 F.3d 1268, 1272 (Fed. Cir. 2002) ("Int'l Trading");[5] see

---

[5] In Int'l Trading, the Court of Appeals explained:

Before section 1504 was enacted, there was no statutory restriction on the length of
time Customs could take to liquidate an entry. St. Paul Fire & Marine Ins. Co. v.
United States, 6 F.3d 763, 767 (Fed. Cir. 1993). "Customs could delay liquidation

also United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1559 (Fed. Cir. 1997) ("The 'deemed liquidated' provision of section 1504 was added to the customs laws in 1978 to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry."). Under this earlier version of § 1504(d), generally deemed liquidation would occur within one year of entry or within four years if suspension intervened. If liquidation continued to be suspended beyond the four year limit, liquidation was to occur within 90 days of the removal of suspension.

In Canadian Fur Trappers Corp. v. United States, 12 CIT 612, 615, 691 F. Supp. 364, 367 (1988), aff'd, 884 F.2d 563 (Fed. Cir. 1989), however, the 90-day period was found to be directory rather than mandatory, so that entries, the liquidation of which was suspended for more than four years, were not subject to deemed liquidation. Unfortunately for Ad Hoc, the statute was again amended in 1993. The 1993 amendment became effective on December 8, 1993, without a limitation to entries made after that date, and it provides for deemed liquidation if liquidation does not occur within six months of Customs receipt of notice of the removal of suspension. Pub. L. No. 103-182, 107 Stat. 2057, 2219, § 641(1)(A).[6]

---

as long as it pleased, with or without giving notice." Int'l Cargo & Surety Ins. Co. v. United States, 779 F.Supp. 174, 177 (Ct. Int'l Trade 1991). In 1978, Congress enacted section 1504 to impose a four-year time limit for liquidation. The primary purpose of section 1504 was to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." Dal-Tile Corp. v. United States, 829 F. Supp. 394, 399 (Ct. Int'l Trade 1993) (internal quotations and citation omitted).

281 F.3d at 1272.

[6] The 1984 amendment, effective as to post November 14, 1984 entries, Pub. L. No. 98-573, § 195(a), 98 Stat 2948, 2974 (1984), did not alter the basic scheme. Ad Hoc argues that

Ad Hoc argues, however, that application of the 1993 amendment would be a retroactive application of a statute to 1991-1992 entries, where the intent to apply the statute retroactivity has not been made clear by Congress.  See Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994) (retroactive affect only if clear congressional intent).  It is somewhat difficult to determine what is a retroactive application where unliquidated entries are at issue, and suspension was in effect when the statute was enacted.  American Permac, Inc. v. United States provides some guidance on this issue. 191 F.3d 1380 (Fed. Cir. 1999).  In that case, the six months deemed liquidation provisions were found to effect an improper amendment when the time period had already expired before the law was enacted.  Id. at 1382.  Here the liquidation periods had not run and there were no settled expectations as to deemed liquidation as to the entries at issue here.  As applied here, the 1993 act does not impair vested rights, increase liability for past conduct, or impose new duties in the broad sense.  See Landgraf, 511 U.S. at 280.  Thus, it is proper to assume that Congress' unlimited effective date applies and the application of the 1993 statute is not a retroactive application.

Ad Hoc alternatively relies on the 1994 amendments, which may provide different remedies other than deemed liquidation, or in addition to deemed liquidation, an issue which the court does not decide.  The 1994 amendments, however, apply to post January 1, 1995, administrative reviews.  Pub. L. No. 103-465 § 291.  They are not applicable.  Ad Hoc also relies on the addition of the 1996 amendments, which are effective as of December 8, 1993.  Pub. L. No. 104-295 § 3(b).  Those amendments, however, did not eliminate deemed liquidation.

---

somehow the effective date language of the 1984 amendments indicates that the pre-1993 version continued to apply post-1993.  The court rejects this argument.

Under the 1993 amendment, the next issue is whether Customs received notice of the removal of suspension of liquidation so as to trigger the six-month deemed liquidation period. The liquidation instructions of March 23, 1998, clearly state that they "constitute the immediate lifting of suspension." The notice, however, was not a public notice and, in fact, suspension had not yet been lifted.

Fujitsu General America, Inc. v. United States states that suspension does not end until the period for seeking writ of certiorari has expired. 283 F.3d 1364, 1379 (Fed. Cir. 2002) ("Fujitsu"). The Judgment of the Federal Circuit herein was entered on January 8, 1998, and the parties had ninety days under 28 U.S.C. § 2101(c), or until April 8, 1998, to file for a writ of certiorari. Because the time for appeal had not yet expired, suspension of liquidation had not been lifted when Customs issued the March 23, 1998 instructions. Further, both Fujitsu and International Trading endorse the concept that the notice should be both unambiguous and public. Of course, in those cases there were public Federal Register notices. Here, no such notice was posted. The court has recently held in NEC that an unambiguous public notice other than the Federal Register notice will suffice to trigger deemed liquidation under the 1993 amendment. Here, the March 23, 1998 notice was not public, and it cannot be said to be unambiguous where the suspension had not yet been lifted. Some other event might suffice to cure this notice so as to trigger the six-month period, but the parties have not brought it to the court's attention. The court does not decide whether, post-suspension removal, specific and clear suspension removal notice via liquidation instructions will suffice, even if the instructions are not

made public, but alone the March 23, 1998 notice does not qualify.[7]

As proper deemed liquidation has not been established for any of the entries, the court turns to the issue of just what remedies may be available to Ad Hoc. As indicated, 19 U.S.C. § 1504(d) was meant to benefit importers. Therefore, it fits neatly into the Customs protest of liquidation scheme. If a deemed liquidation or any liquidation is adverse to an importer, it has its protest remedies under 19 U.S.C. § 1514 and access to judicial review under 28 U.S.C. § 1581(a). Domestic parties have no specific avenue of relief for improper liquidation.[8] The Byrd Amendment might have been accompanied with a new administrative remedy provision for domestic parties, but it was not. As to the Nogales entries, which were liquidated in 2001, 19 U.S.C. § 1514(a) bars Ad Hoc's claim because the liquidation became final as to "all persons" after 90 days passed. 19 U.S.C. § 1514(a).

19 U.S.C. § 1514 developed piecemeal, but the finality provision of 19 U.S.C. § 1514(a) is not obviated by the provisions of 19 U.S.C. § 1514(b), which suspend finality of liquidation if actions are filed challenging antidumping duty determinations. Section 1514(b) was enacted pursuant to the Trade Agreements Act of 1979, Pub. L. No. 96-39, 93 Stat. 144 (1979), which was before the court had equitable power to enjoin liquidation; today it seems somewhat redundant. There is no legislative history to guide the court. Section 1514(b) does seem, however, to assist the statutory goal of not requiring parties to proceed on multiple fronts.

---

[7] The court is aware that deemed liquidation defeats the direction of 19 U.S.C. § 1516a(e) (requiring liquidation in accordance with the final court decision), but that is the effect of the deemed liquidation provision. This is not the reason for the court's finding of no deemed liquidation.

[8] Domestic parties have been given certain rights to challenge classification and rate of duty decisions, but the remedies are prospective. See 19 U.S.C. § 1516.

Rather, they are to challenge substantive antidumping duty determinations before Commerce or the International Trade Commission, as appropriate, with judicial review rights as to adverse determinations. See Sandvik Steel Company v. United States, 164 F.3d 596, 600-02 (Fed. Cir. 1998). Here, there are no pending proceedings and nothing in § 1514(b) indicates it prevents finality as to Customs' determinations after court proceedings are conclusively terminated. Otherwise, there would never be finality, which is clearly contrary to legislative intent.

Unlike the automatic liquidations in L.G. Electronic U.S.A., Inc. v. United States, 21 CIT 1421, 1431, 991 F. Supp. 668, 677 (1997), which were barred by a court injunction and which the court declined to recognize, here there was no longer a court injunction in effect and the posted liquidations were purposeful. See also Yancheng Baolong Biochemical Company, Ltd. v. United States, No. 01-00338, slip op. 03-84 at 12 (Ct. Int'l Trade July 16, 2003) (no protest required of liquidations in violation of court order.). Customs made a decision to recognize deemed liquidations and to post them. It is Customs' decision to declare deemed liquidation, not that of any other agency, which is at issue. Assuming Ad Hoc had any rights to prevent finality, under these circumstances it would have had to act within 90 days of the posting of notice of liquidation to avoid the effects of 19 U.S.C. § 1514(a).

Further, by waiting beyond the 2001 collection year Ad Hoc seeks to disrupt the Byrd Amendment distribution scheme. Was the lone 2001 claimant entitled to a different distribution? Is Ad Hoc entitled to complain about funds it wants collected in 2003 when the funds should have been collected in 1998 or, at the latest, 2001? Even if 19 U.S.C. § 1514(a) does not bar Ad

Hoc, it waited too long as to the Nogales entries.[9] Parties to unfair trade litigation should not

have to police the Commerce Department, but without having filed a Byrd Amendment claim to

2001 collections, Ad Hoc is not in a position to complain about an erroneous liquidation in that

year. For purposes of the Byrd Amendment, it was not harmed by incorrect 2001 deemed

liquidations. Even if it technically is harmed by the liquidations because it lost the ordinary

competitive advantages resulting from the antidumping proceedings, those advantages were

temporary and tangential. Ad Hoc should have pursued whatever remedies it had to enforce the

judgment here promptly. Enforcement at this date would prejudice other parties by disrupting

finality and the Byrd Amendment distribution scheme.

The court has not determined what relief, if any, is available as to the one El Paso entry

for which liquidation was posted within the 90 days prior to this action, or for the Los Angeles

entry which remains unliquidated. The parties are to consult. If the parties agree as to

reliquidation, or if reliquidation as to these entries is not to be pursued, the court will enter an

_____

[9] Because Ad Hoc has no remedies as to the Nogales entries, the court need not allow
further attempts by Cemex or the United States to establish deemed liquidation as to those
entries.

order denying Ad Hoc's motion so that it may pursue its appellate rights, if it chooses.[10]  If the dispute is to continue, Cemex and the United States have eleven (11) days to explain these positions as to those entries, applying this decision.  Ad Hoc has seven (7) days to respond. SO ORDERED.

_____
Jane A. Restani
Judge

Dated:  New York, New York.

This 12th day of August, 2003.

---

[10]  The parties are also to advise if Cemex' motion to strike the Rule 26(f) report is now moot.

**ERRATUM**


<u>Cemex, S.A. v. United States</u>, Consolidated Court No. 93-10-00659, Slip Op. 03-102, dated August 12, 2003.

On the second line of page 11, replace "explain these" with "explain their".


August 19, 2003