Slip Op. 04-129
United States Court of International Trade

```
┌─────────────────────────────────────┐
│ NORSK HYDRO CANADA INC.,             │
│                                      │
│          Plaintiff,                  │
│       v.                             │
│                                      │
│ UNITED STATES,                       │
│                                      │
│          Defendant,                  │
│                                      │
│       and                            │
│                                      │
│ U.S. MAGNESIUM, LLC,                 │
│                                      │
│          Defendant-Intervenor.       │
│                                      │
└─────────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 03-00828

[Defendant's Motion to Dismiss denied.]

Decided: October 12, 2004

Steptoe & Johnson LLC (Eric C. Emerson, Gregory S. McCue, Meredith A. Rathbone) for Plaintiff Norsk Hydro Canada Inc.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Stephen C. Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Jonathan J. Engler, Attorney-Advisor, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant.

King & Spalding, LLP (Stephen A. Jones, Joseph W. Dorn, Jeffrey M. Telep) for Defendant-Intervenor U.S. Magnesium, LLC.

**OPINION**

**POGUE, Judge:** This is a dispute over the calculation and collection of countervailing duties on pure and alloy magnesium that Plaintiff imported into the United States. The Defendant United States Department of Commerce ("Commerce") declined, during an administrative review of Plaintiff's entries of pure and alloy

magnesium, to recognize Plaintiff's overpayment of countervailing duties. Plaintiff brings this action under 19 U.S.C. § 1581(c) (2000), challenging Commerce's decision as not in accordance with law. Specifically, Plaintiff claims that 19 U.S.C. § 1671(a) requires Commerce to recognize and offset Plaintiff's overpayment so that the total duties imposed over time equal the net countervailable subsidy. Defendant moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under USCIT R. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to USCIT R. 12(b)(5). Def.'s Mot. Dismiss at 5. Because jurisdiction is proper under § 1581(c) and Plaintiff has properly alleged that Commerce acted not in accordance with law, the Court denies Defendant's motion.

## BACKGROUND[1]

In 1992, the government of the United States determined that Plaintiff, Norsk Hydro Canada Inc., ("NHCI"), received two non-recurring countervailable grants from Canada; the grants created a fixed total net subsidy amount to be countervailed. Pure Magnesium and Alloy Magnesium From Canada, 57 Fed. Reg. 39,392 (Dep't Commerce Aug. 31, 1992) (countervailing duty orders); Compl. of

---

[1]For purposes of its motion to dismiss, the government accepts the facts as alleged in paragraphs four through ten of Plaintiff's complaint. Def.'s Mot. Dismiss at 3.

NHCI at para 4. Commerce amortized the non-recurring grants over a fourteen year period and calculated an amount to be countervailed each year. Compl. of NHCI at para 4. Commerce has conducted annual administrative reviews of the amount of the countervailing duty. See 19 U.S.C. 1675(a).[2]

Throughout 1997, Plaintiff imported pure and alloy magnesium that was subject to various countervailing duty (CVD) cash deposit

---

[2]The text of 19 U.S.C. § 1675(a) states, in relevant part:

(a) Periodic review of amount of duty

 (1) In general

   At least once during each 12-month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—
        (A) review and determine the amount of any net countervailable subsidy,
        (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and
        (C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net countervailable subsidy or dumping margin involved in the agreement,

 and shall publish in the Federal Register the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed.

 19 U.S.C. § 1675(a).

rates, depending on the date of each entry. Compl. at para. 5.[3]  On September 8, 1999, Commerce published the Final Results of its administrative review covering the 1997 entries.  Pure Magnesium and Alloy Magnesium From Canada, 64 Fed. Reg. 48,805 (Dep't Commerce Sept. 8, 1999) (final results of countervailing duty administrative reviews).  The results of the administrative review determined that countervailing duties should be assessed at 2.02% on Plaintiff's 1997 entries of pure and alloy magnesium.  Id. at 48,806.  Commerce then issued instructions to the United States Bureau of Customs and Border Protection ("Customs")[4] to that effect.  Compl. of NHCI at para. 5.  Customs sent an e-mail to all Customs ports of entry containing Commerce's liquidation instructions.  Id.; Customs Message No. 9342201, Pl.'s Ex. 3 (Dec. 8, 1999).  However, in September 2000 and February 2001, Customs officials at Port Huron issued a notice of liquidation for Plaintiff's 1997 entries, advising that liquidation had occurred at the higher cash deposit rates rather than at the 2.02% final

---

[3]These rates varied from 3.18% to 7.61%.  See Compl. Of NHCI at para. 5.

[4]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-296 §1502, 2002 U.S.C.C.A.N. (116 Stat.)  2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

assessment rate.[5]  Compl. of NHCI at para. 6; see also Liquidation

Notices, Attach. 1 to Pl.'s Resp. to Ct. Order ("Pl.'s Supp. Br.").

During the administrative review of Plaintiff's 2001 entries,

Plaintiff provided a spreadsheet listing of each 1997 entry

wrongfully liquidated by Customs, and calculated the amount of

excess countervailing duties, plus interest, retained by the U.S.

government as of the date of the spreadsheet.[6]  Compl. of NHCI at

para. 7.  Plaintiff requested that Commerce adjust its 2001

countervailing duty final results to account for this over

imposition of countervailing duties. Id. However, Commerce claimed

that the issue was not properly before it for review and that it

lacked the authority to address this issue, asserting that Customs'

erroneous liquidation should have been protested to Customs.  Pure

Magnesium and Alloy Magnesium from Canada, 68 Fed. Reg. 25,339,

_____

[5]NHCI states that it received courtesy copies of the
liquidation notices by mail at most a few weeks after the
notices' issuance in September 2000 and February 2001.  See Pl.'s
Response to Court Order at 2 ("Pl.'s Supp. Br."). The notices
themselves are unclear as to whether they constitute only a late
acknowledgment that liquidation by operation of law had taken
place or whether they mean to convey Customs' intention to
actively re-liquidate the entries, but at the same rate at which
they had liquidated by operation of law. For further discussion
of this issue, see infra pp. 9-14.

[6]Commerce conducted a 2000 administrative review of which
the final results were published in the Federal Register on
September 10, 2002. Pure Magnesium and Alloy Magnesium From
Canada; 67 Fed. Reg. 57,394 (Dep't Commerce, Sept. 10, 2002)
(preliminary results of countervailing duty administrative
reviews).  Plaintiff did not challenge the liquidation of the
1997 entries during this administrative review.

25,340 (Dep't Commerce May 12, 2003) (preliminary results of countervailing duty administrative reviews).

Plaintiff responded by claiming that it was unable to protest the treatment of its entries to Customs because liquidation occurred by operation of law, and was therefore not statutorily protestable. <u>See</u> Compl. of NHCI at para 9. Plaintiff moreover claimed that under 19 U.S.C. § 1671(a)[7] Commerce was required to offset its 2001 payments to ensure that the amount of countervailing duties imposed over the entire amortization period equals the net countervailable subsidy received. Compl. of NHCI at para. 9. Commerce again rejected Plaintiff's argument. Compl. of NHCI at para. 10.

In the instant claim, Plaintiff asks the Court to hold unlawful Commerce's refusal to offset the excess countervailing duties imposed on Plaintiff's past entries of pure and alloy magnesium, as encompassed by the final results of the administrative review. Compl. of NHCI at 10 (prayer for relief). Defendant moves to dismiss Plaintiff's complaint for lack of

---

[7]19 U.S.C. § 1671(a) states, in relevant part:

If [Commerce] determines that . . . a country . . . is providing directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States . . . there shall be imposed upon such merchandise a countervailing duty . . . equal to the amount of the net countervailable subsidy.

19 U.S.C. § 1671(a).

subject matter jurisdiction under USCIT R. 12(b)(1) and for failure to state a claim upon which relief can be granted under USCIT R. 12(b)(5).  Def.'s Mot. Dismiss at 5.

## STANDARD OF REVIEW

The two issues before this Court are whether this court has subject matter jurisdiction and whether, assuming that the court does have subject matter jurisdiction over Plaintiff's complaint, Plaintiff has failed to state a claim upon which relief can be granted.  Where jurisdiction is challenged, "because Plaintiff is seeking to invoke the Court's jurisdiction, it has the burden to establish the basis for jurisdiction."  See Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT __, __, 273 F. Supp. 2d. 1336, 1338 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). At the same time, "the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

To the extent that this case properly arises under 28 U.S.C. § 1581(c), this Court reviews the actions of the government in countervailing subsidy proceedings to determine whether they are "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Accordingly, in order to determine whether Plaintiff's complaint

states a claim upon which relief can be granted, the Court must decide whether or not Plaintiff has properly alleged that Commerce, in denying its requested adjustment, acted in a manner not "in accordance with law."

## DISCUSSION

This opinion will first discuss subject matter jurisdiction, and second, Defendant's argument regarding failure to state a claim upon which relief can be granted. In evaluating the argument that Plaintiff has failed to state a claim, the Court will focus on the question of whether Plaintiff has properly alleged that Commerce failed to act in accordance with law under 19 U.S.C. § 1671(a) by refusing to offset the duties imposed on Plaintiff's past entries.

## A. Subject Matter Jurisdiction under 28 U.S.C. § 1581(c)

Commerce argues that 28 U.S.C. § 1581(c) is not the proper vehicle for bringing Plaintiff's claim. Specifically, Commerce argues that Plaintiff should have exhausted administrative remedies under 28 U.S.C. § 1581(a) before bringing a claim against Commerce. The Court will first address whether § 1581(c) provides jurisdiction over Plaintiff's claim. Then, the Court will address the question of whether, even if § 1581(c) does provide jurisdiction, Plaintiff should nonetheless be required to exhaust remedies under § 1581(a).

I.   Section 1581(c) provides jurisdiction for a claim challenging Commerce's 2001 administrative review determination.

Section 1581(c) provides for judicial review of certain "reviewable determinations" outlined in 19 U.S.C. § 1516a(a)(2)(B). See 28 U.S.C. § 1581(c); 19 U.S.C. § 1516a. If not outlined in this statute, an action by Commerce cannot be categorized as a "reviewable determination" and thus, the Court will not possess jurisdiction under § 1581(c). See Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1304 (Fed. Cir. 2004). Under § 1516a(a)(2)(B), a reviewable determination refers to, among other things, "a final determination . . . by the administering authority or the Commission under section 1675 of this title." See 19 U.S.C. § 1516a(a)(2)(B)(iii).

Title 19 U.S.C. § 1675 provides for annual administrative reviews of the amount of countervailing duties. See 19 U.S.C. § 1675. Determinations stemming from annual administrative reviews are therefore reviewable determinations under 19 U.S.C. § 1516a, and 28 U.S.C. § 1581(c) provides the Court with subject matter jurisdiction to hear challenges to such determinations. As Plaintiff here challenges Commerce's 2001 administrative review determination as not in accordance with law, jurisdiction exists over this "reviewable determination" pursuant to 28 U.S.C. § 1581(c).

ii.  Exhaustion of Remedies under § 1581(a) is not required.

Commerce's argues that there is no jurisdiction under § 1581(c) because (1) all other administrative remedies should be exhausted before a § 1581(c) claim may be brought and (2) Plaintiff had available administrative remedies under § 1581(a). Def.'s Mot. Dismiss at 10.  The Court will first discuss whether Plaintiff had any remedies available under 28 U.S.C. § 1581(a).  To the extent that such remedies existed, the Court will then discuss whether jurisdiction here depends on their exhaustion.

a. Plaintiff had an available remedy under § 1581(a).

Title 28 U.S.C. § 1581(a) provides this Court jurisdiction over protests against Customs' decisions.  See 28 U.S.C. § 1581(a), 19 U.S.C. §§ 1514, 1515.  However, Plaintiff claims that its entries liquidated by operation of law pursuant to 19 U.S.C. § 1504(d), and that as such liquidation involves no "decision" by Customs, it was therefore unable to protest the liquidation under § 1581(a).  Pl.'s Opp'n to Mot. Dismiss at 21 ("Pl.'s Br.").  Section 1504(d) states that liquidation by operation of law occurs if six months after having received notice of the removal of suspension of liquidation, Customs has not liquidated the entries.  See 19 U.S.C. § 1504(d).[8]  Notice of the removal of suspension

---

[8]The text of § 1504(d) is as follows:

Except as provided in section 1675(a)(3) of this title, when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is

occurs when the final results of an investigation or review are published in the Federal Register. See Int'l Trading Co. v. United States, 281 F.3d 1268, 1277 (Fed. Cir. 2002) (holding that publication of the final results provides notice to Customs of the correct liquidation amount, thereby beginning the six months until liquidation occurs by operation of law). Thus, entries are deemed liquidated within six months of the Federal Register notice of the final results. Id.[9] The 1997 countervailing duty final results

_____

extended under subsection (b) of this section, within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry (other than an entry with respect to which liquidation has been extended under subsection (b)) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d).

[9]The Court recently addressed a claim that the first clause of § 1504(d), which refers to 19 U.S.C. § 1675(a)(3), invalidates liquidation by operation of law for any entries previously subject to an administrative review. See Int'l Trading Co. v. United States, slip op. 04-01 at 7-13 (CIT Jan. 2, 2004). Title 19 U.S.C. § 1675(a)(3) states in part:

> [I]f the administering authority orders any liquidation of entries pursuant to a review under [section 1675(a)(1)], such liquidation shall be made promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued. In any case in which liquidation has not occurred within that 90-day period, the Secretary of the Treasury shall, upon the request of the affected party, provide an explanation thereof.

19 U.S.C. § 1675(a)(3)(B). In Int'l Trading Co., the government argued that where Commerce ordered liquidation of

were published in the Federal Register on September 8, 1999.

Compl. of NHCI at para. 5.   Thus, because Customs made no

intervening attempt to liquidate, the entries at issue were all

deemed liquidated by operation of law by March 8, 2000.

Case law is divided on the matter of whether an importer can

protest a deemed liquidation.  Section 1514(a) indicates that only

Customs "decisions" may be protested.  The Court has explained

that:

> [T]ypically, 'decisions' of Customs [under 1514(a)] are
> substantive determinations involving the application of
> pertinent law and precedent to a set of facts, such as
> tariff classification and applicable rate of duty. U.S.
> Shoe Corp. v. United States, 114 F.3d 1564, 1569 (Fed.
> Cir. 1997), aff'd, 523 U.S. 360 (1998).  Customs does not
> make a decision in order to effect a deemed liquidation.

Fujitsu Gen. Am., Inc. v. United States, 24 CIT 733, 739,  110 F.

Supp. 2d 1061, 1069 (2000), aff'd, 283 F.3d 1364 (Fed. Cir.

---

entries that had been subject to suspension during an
administrative review, § 1504(d) did not apply; rather,
Customs could take as long as it desired to liquidate
entries, so long as it could provide an explanation upon
request. The Court found this argument unpersuasive. Among
other things, the Court found that given that § 1504(d)
applies, by its terms, to "any entry," even entries that had
been under administrative review were subject to liquidation
by operation of law within six months of the Federal
Register notice of the final results.  See Int'l Trading Co.
v. United States, slip op. 04-01 at 7-8 (CIT Jan. 2, 2004).
Therefore, the entries at issue here were subject to deemed
liquidation under § 1504(d), although the question would be
mooted were it clear that Customs had re-liquidated the
goods.  See supra note 5.

2002).[10]  A more recent decision of the Court, however, states that "[i]f a deemed liquidation or any liquidation is adverse to an importer, it has its protest remedies under 19 U.S.C. § 1514 and access to judicial review under 28 U.S.C. § 1581(a)."  Cemex, S.A. v. United States, 27 CIT __, __, 279 F. Supp. 2d 1357, 1362 (2003), aff'd, Court Nos. 04-1058, 04-1080 (Fed. Cir. Sept. 28, 2004).

However, regardless of whether a deemed liquidation is protestable or not, Plaintiff was not necessarily without a Customs remedy.  If Customs' September 1999 and March 2000 notices of liquidation were evidence of an active reliquidation of NHCI's entries, that reliquidation would clearly have been protestable as a decision of the Customs Service under 19 U.S.C. § 1581(a).  If, on the other hand, Customs' September 1999 and March 2000 notices of liquidation were merely belated indications that deemed liquidation had occurred, then it is possible that an avenue of relief existed under 19 U.S.C. § 1520(c).  Title 19 U.S.C. § 1520(c) allows for challenges of mistakes of fact, clerical errors,

---

[10]The Court notes that this decision had not been issued by the time that Plaintiff received the notices of liquidation regarding its entries.  However, the groundwork for Fujitsu Gen. Am.'s holding that deemed liquidations were not subject to protest had already been laid by U.S. Shoe Corp., cited above, which stated that a Customs decision involved application of law to facts; even before the specific holding in Fujitsu Gen. Am., it was apparent that no "decision" was involved in liquidation by operation of law.  However, as this Court's decision in the instant case does not rest on finding that there was no protestable decision by the Customs Service, the point is moot.

or other inadvertences within one year of liquidation.[11] Although Customs' failure to liquidate entries in accordance with Commerce's instructions cannot be categorized as a mistake of fact or a clerical error,[12] a liquidation by operation of law may result from inadvertence. Inadvertence has been defined as "an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake. It is thus language broader in scope than mistake." See Hambro Automotive Corp. v. United States, 66 C.C.P.A. 113, 118, 603 F.2d 850, 854 (1979) (citing C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 22, 336 F. Supp. 1395, 1399 (1972) (internal citation omitted). Therefore, to the extent liquidation by operation of law occurred as a result of Customs' inattention or carelessness, this occurrence could have been challenged as an inadvertence under § 1520(c).[13]

---

[11]The text of 19 U.S.C. § 1520(c) is as follows:

  Notwithstanding a valid protest was not filed, the Customs Service may. . .reliquidate an entry or reconciliation to correct—
        (1)a clerical error, mistake of fact, or other inadvertence . . . adverse to the importer and manifest from the record or established by documentary evidence in any entry . . . when the error, mistake or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction.

19 U.S.C. § 1520(c).

[12]Commerce concedes that if deemed liquidation occurred, it occurred inadvertently. Def.'s Mot. Dismiss at 11.

[13]Refusal to correct a mistake, clerical error, or inadvertence would itself be a "decision" of Customs, and

        Accordingly, it appears that whether Plaintiff's entries liquidated by operation of law, or whether, having allowed the entries to liquidate by operation of law, Customs actively re-liquidated them in a manner inconsistent with Commerce's instructions, Plaintiff did have a Customs remedy available.  The Court therefore moves on to consider whether exhausting such a remedy should have been prerequisite to filing the claim here.

### b. Exhaustion of the § 1581(a) Remedy Was Neither Required, Nor Appropriate.

        There are two statutes that this Court must consider in deciding whether jurisdiction here depends on Plaintiff's exhaustion of its available Customs remedy.  First, the Court will examine whether 28 U.S.C. § 1581, which comprises the various grants of jurisdiction to this Court, contains such a requirement of exhaustion.  Second, the Court will consider 28 U.S.C. § 2637(d), which gives this Court discretion to require exhaustion of administrative remedies where there is not otherwise a statutory requirement of exhaustion.

        Title 28 U.S.C. § 1581(a)[14] provides jurisdiction for this Court to review the denial of Customs protests under § 1514, or refusal

---

therefore protestable 28 U.S.C. § 1581(a).

        [14]The text of 28 U.S.C. § 1581(a) is as follows:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

to correct an error, mistake or inadvertance under § 1520(c). Title 28 U.S.C. 1581(c)[15] provides jurisdiction for this Court to review certain determinations of the Department of Commerce. Neither section refers to the other.  Each grant of jurisdiction stands alone, providing separate and distinct avenues of relief. The language of these statutes, therefore, does not appear to require exhaustion of Customs remedies in order to bring a ripe claim against Commerce.[16,17]  However, although § 1581(c) on its own

---

[15]The text of 28 U.S.C. § 1581(c) is as follows:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516(A) of the Tariff Act of 1930.

[16]Moreover, Omni U.S.A., Inc. v. United States, 840 F.2d 912 (Fed. Cir. 1988), a "parallel" case cited by Commerce as requiring Plaintiff to protest under § 1520(c) in a situation such as this, is inapposite to the case before this Court. Because the plaintiff in Omni U.S.A. missed the opportunity to protest under § 1520(c) and § 1581(a), Plaintiff was precluded from asserting all claims under § 1581(i) jurisdiction.  This is because "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another section of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987).  However, in the present case as mentioned above, because Plaintiff is seeking to establish § 1581(c) jurisdiction, and not (i), even if a possible remedy existed under § 1520(c), it does not preclude § 1581(c) jurisdiction.

[17]The Court also notes that the statutes providing for the causes of action that Plaintiff could possibly have proceeded under, 19 U.S.C. § 1514(a) (Customs protest either of wrongful active liquidation or refusal to correct wrongful inadvertent liquidation), 19 U.S.C. § 1520(c) (Customs mistake) and 19 U.S.C. § 1671(a) (requiring that only duties equal to the net countervailable subsidy are imposed) do not refer to one another in any way.

terms does not appear to require exhaustion of Customs remedies, it remains within this Court's discretion to require such exhaustion under a separate statute, 28 U.S.C. § 2637(d).  Title 28 U.S.C. § 2637(d) states that "[i]n any [§ 1581(c)] action . . ., the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). "Administrative remedies," as the phrase is used in 28 U.S.C. § 2637(d), presumably includes all remedies that could or would have been available, including Customs remedies.  Accordingly, this Court must determine whether it is appropriate to require that Plaintiff have exhausted its Customs remedies in this case.

There is a factor counseling for the exhaustion requirement; i.e., Plaintiff appears to have allowed the filing period on its Customs remedy to run out before bringing its claim to Commerce's attention.  This laxity invites the speculation that Plaintiff slept on its rights.  Nonetheless, the Court is persuaded that such tardiness cannot preclude relief where Congress created independent remedies with different agencies.  Even where statutes overlap in their remedial effect, courts do not hold that one must be favored over another absent Congressional language to that effect.  See, e.g., Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 90-92 & n.5 (1991); Brooks v. United States, 337 U.S. 49, 53 (1948). There is no such limiting language here.  Moreover, as noted above, none of the statutes that could provide a cause of action in this case

refer to each other in any way that this Court could reasonably construe as requiring a prospective Plaintiff to exhaust remedies with one agency before proceeding against another.

Furthermore, Congress appears to have acquiesced in the possibility that a prospective Plaintiff would have a choice of pursuing a remedy with Customs or Commerce, in light of this Court's holding in Serampore Indus. Pvt. Ltd. v. United States Dep't of Commerce, 11 CIT 866, 675 F. Supp. 1354 (1987) ("Serampore"). In Serampore, the Court upheld Commerce's interpretation of the word "imposed," as used in 19 U.S.C. § 1677(a), to mean "assessed." Serampore, 11 CIT at 871-73, 675 F. Supp. at 1359. This definition applies to other uses of the word "imposed" in the countervailing duty statutes,[18] including the word's use in 19 U.S.C. § 1671(a). Title 19 U.S.C. § 1671(a) requires that the duties imposed be equal to the net countervailable subsidy. Because it is Customs that carries out the actual assessment of duties, through liquidation procedures, see 19 U.S.C. § 1500, this gives Commerce some responsibility for Customs' liquidation of entries subject to countervailing duty orders, inasmuch as Commerce must correctly calculate the duties so

---

[18]Any term used in multiple places in a single statute is presumed to carry the same meaning throughout. See RHP Bearings Ltd. v. United States, 288 F.3d 1334, 1347 (Fed. Cir. 2002); SKF USA Inc. v. United States, 263 F.3d 1369, 1382-83 (Fed. Cir. 2001). Moreover, in the instant case, Commerce has indicated no disagreement with interpreting "imposed," as used in 19 U.S.C. § 1677(a), to mean the actual assessment of duties by Customs.

that Customs will assess the correct amount of duties.  Since the

Serampore decision was issued, Congress presumably has been aware

that both Commerce and Customs are involved in the "imposition" of

countervailing duties, and that both agencies may be called upon to

remedy a defect in such imposition.[19]  Given that the trade

statutes, including the provisions regarding countervailing duties,

---

[19]There appears to be no disagreement, on the facts here, that it is Customs that, through liquidation procedures, imposes duties.  However, the Court notes that Commerce recently elected to change its interpretation of "imposed," so that countervailing duties are "imposed" not when Customs actually assesses the duties, but when Commerce publishes the results of an administrative review in the Federal Register.  Dupont Teijin Films USA, LP v. United States, 27 CIT __, 297 F. Supp. 2d 1367 (2003).  Where Congress has left a gap for an agency to fill, as it appears to have done with regard to the meaning of the word "imposed" throughout the countervailing duty statutes, the agency is at liberty to change its interpretation, so long as its new interpretation is reasonable. Commerce's new interpretation was granted deference by the Court.  Id.

Although Dupont Teijin Films USA, LP dealt with a different provision than that at issue here, where a word is used multiple times over the course of a statute, courts presume that the term maintains the same meaning throughout.  Therefore, it would appear that "imposed," does not mean "assessed," at least after the end of 2003.  This action arose, of course, before the end of 2003, and the actions complained of also occurred before Commerce's new interpretation of "imposed" was approved by the Court.  Moreover, Commerce does not advocate for this new interpretation in its submissions here.

Nevertheless, the Court notes that in future cases, given this new interpretation of the word "imposed," the result here may not obtain. Where duties are imposed at the time of Federal Register publication, Commerce would presumably need not take into account Customs particular liquidations of previous years' entries.  Rather, Commerce's duty would only be to annually publish a duty rate in the Federal Register which conformed to its overall plan for amortizing the overall subsidy.  In such a case, it would appear that wrongful acts or errors occurring at liquidation could then only be corrected through Customs protests.

have been subject to numerous revisions since 1987, especially with regard to the Uruguay Round, Congress' failure to indicate that it favored remedies against one agency as opposed to another supports the notion that Congress intended that where either agency is capable of remedying the wrong, Plaintiffs have their choice of remedy.  See Gen. Dynamics Land Sys. v. Cline, 124 S. Ct. 1236, 1245 (2004) (Congress' failure to amend longstanding judicial construction of the Age Discrimination in Employment Act amounted to Congressional acquiescence to the judicial interpretation).

Finally, although Plaintiff did wait approximately two years from the time that Customs issued notices of the improper deemed liquidation, or improper active liquidation, to bring its claim to Commerce, and did not raise this issue in the administrative review for the year 2000, such a delay is not particularly prejudicial to Commerce or to the administration of justice in this matter.  It is agreed that, in the instant case, Commerce amortized the duties owed over a fourteen year period. Nor is there any statutory requirement that an issue be brought to Commerce within a certain time.  It therefore appears to the Court that so long as Plaintiff brought the matter of the overpayment to Commerce's attention at a time when it was still feasible for Commerce to adjust the amortization schedule or otherwise offset the payment so that the administrative reviews would result in Customs' overall assessment of duties equal to the net countervailable subsidy, there is no

prejudice to Commerce.

Therefore, the Court finds that while an administrative remedy before Customs was available to Plaintiff, Plaintiff was not statutorily required to exhaust that remedy before bringing its claim against Commerce. Moreover, given the particular statutes involved and Congress' presumed decision to allow certain judicial constructions thereof to remain unchanged, it would be inappropriate for the Court to require such exhaustion. The Court will therefore now discuss whether Plaintiff has stated a claim upon which relief can be granted.

B. <u>Plaintiff States a Claim Upon Which Relief Can Be Granted</u>

As noted above, Plaintiff brings this case to challenge Commerce's determination during the 2001 administrative review not to offset Plaintiff's overpayment of duties on its 1997 entries. Plaintiff contends that Commerce is obligated to offset the amount owed by Plaintiff for its 1997 entries in future years so that the final amount of countervailing duties imposed on Plaintiff will equal the net countervailable subsidy under 19 U.S.C. § 1671(a).

First, the Court will discuss what duties Commerce is charged with under 1671(a) and whether Plaintiff properly states a claim that Commerce acted not in accordance with law. Second, this Court will address Commerce's argument that Plaintiff's claim fails because Commerce does not have the statutory authority to offset

Plaintiff's overpayment of countervailing duties.

First, Plaintiff argues that Commerce's obligation under §
1671(a) is to calculate the amount of duties that Customs will
impose on importers. See Pl.'s Br. at 10.  Plaintiff argues that
though Commerce might have initially calculated the 1997 duties
correctly, Commerce, by failing to take into account the
overpayment resulting from Customs' actions or inadvertences, has
not properly calculated the 2001 countervailing duty assessment
rate. See id.  Because Customs itself has no authority to collect
countervailing duty moneys except in accordance with Commerce's
instructions, Commerce's refusal to offset the overpayment will
result in Customs' imposition, over the amortization period, of
duties in excess of the net countervailable subsidy. Although
Commerce was not the original source of error, Commerce will have
knowingly violated § 1671(a) by not correctly instructing Customs
in a manner that results, over the amortization period, in the
collection of duties equal to the net subsidy.[20] See Pl.'s Br. at

---

[20]The Court finds the language of 19 U.S.C. § 1675(a),
providing for annual administrative reviews of antidumping and
countervailing duty orders, revealing. With regard to
countervailing duty reviews, this statute states:

   At least once during each 12-month period beginning on the
anniversary of the date of publication of a countervailing duty
order . . . [Commerce] . . . shall—
     (A) review and determine the amount of any net
countervailable subsidy.

19 U.S.C. § 1675(a).

11-12. Accordingly, Plaintiff's claim alleges that Commerce's determination during the 2001 review not to offset Plaintiff's overpayment was not in accordance with law. Plaintiff's claim therefore properly states a cause of action before this Court.

Second, while Commerce appears to admit that it is responsible for correctly calculating duties so as to result in the overall imposition, by Customs, of duties equal to the net countervailable subsidy, Commerce argues that it lacks authority to offset the 1997 error during the 2001 review because 19 U.S.C. § 1675, the statute providing for administrative reviews, refers to a "12-month period beginning on the anniversary date of the publication of a countervailing duty order." Because each administrative review may only concern itself with what occurred during the "period of review," under Commerce's interpretation of § 1671(a) and § 1675, Plaintiff has no claim for relief because the 2001 administrative review cannot take into account anything that happened with regard to 1997 entries. Def.'s Mot. Dismiss at 8. As there is no indication within § 1671(a) as to how the "period of review" should be applied in this situation, the Court must decide whether to

It is unclear to the Court how Commerce can recalculate the amount of the "net countervailable subsidy," if it does not take into account that which has already been paid, i.e., those moneys that no longer form part of the net countervailable subsidy. Title 19 U.S.C. § 1675(a) and 19 U.S.C. § 1671 thereby complement one another, reinforcing the notion that Commerce must take into account an overpayment from a previous year in further years' recalculations of the "net countervailable subsidy." But see 19 U.S.C. § 1514.

defer to Commerce's interpretation of the interplay between §
1671(a) and § 1675.[21]

Here, Commerce argues that because 19 U.S.C. § 1675(a)(1)
refers to a "12-month period beginning on the anniversary date of
the publication of a countervailing duty order," jurisdiction
pursuant to 28 U.S.C. § 1581(c) does not extend to entries made
before the period of review. Def.'s Mot. Dismiss at 8. Commerce
claims that § 1671(a) cannot apply in this case because Plaintiff's
1997 entries are outside the scope of the twelve-month "periodic
review of duties" for Plaintiff's 2001 entries. However, the Court
will not defer to this interpretation because it would altogether
nullify the meaning and purpose of § 1671(a) with regard to one-
time, non-recurring subsidies.

---

[21]In general, the determination of whether the agency's
statutory interpretation is in accordance with law follows the
two-step analysis formulated in Chevron U.S.A. Inc. v. Natural
Res. Def. Council, Inc., 467 U.S. 837 (1984) ("Chevron"). The
first step is to investigate as a matter of law "whether
Congress's purpose and intent on the question at issue is
judicially ascertainable." Steel Auth. of India, Ltd. v. United
States, 25 CIT 472, 476, 146 F. Supp. 2d 900, 906 (2001) (quoting
Timex V.I., Inc. v. United States, 157 F.3d 879, 881 (Fed. Cir.
1998)). If, after employing the first prong of Chevron, a court
concludes that the statute is silent or ambiguous with respect to
the specific issue, as is the case here, the court proceeds to
the second step. See Chevron, 467 U.S. at 842-43. In the second
step of the Chevron analysis, the narrow legal question is
whether the agency's statutory interpretation is a permissible
construction of the statute. See id. If so, the court must
defer to Commerce's reasonable interpretation. Steel Auth. of
India, Ltd., 25 CIT 472, 476, 146 F. Supp. 2d 900, 906 (2001)
(citing Koyo Seiko., Ltd. v. United States, 36 F.3d 1565, 1573
(Fed. Cir. 1994)).

As established above, by applying Commerce's then current interpretation of "imposed," the language of § 1671(a) clearly indicates that Commerce should calculate the countervailing duties so that ultimately, the amount of countervailing duties that Customs imposes on an importer is equal to the net countervailable subsidy. Yet, by accepting Commerce's proposed interpretation regarding the twelve months of the period of review, Commerce would never be able to correctly calculate the amount of countervailing duties owed over an amortization period if a mistake is made by Customs in the liquidation of the entries. This is because Customs does not assess duties on or liquidate the entries until after the "period of review" regarding those entries is completed and Commerce has published its findings in the Federal Register. See 19 U.S.C. § 1675(a). In effect, any errors or incorrect liquidations made by Customs are with regard to entries belonging to a "period of review" long past. Therefore, if this Court were to accept Commerce's interpretation, and strictly enforce the period of review so that any incorrect liquidation made with regard to entries dating from before the twelve-month period of review cannot be considered, Commerce would not be able to fulfill its obligation to calculate countervailing duties correctly under § 1671(a). This would render the language and meaning of § 1671(a) void with regard to amortized countervailed subsidies, as it would invalidate the mandate to properly calculate countervailing duties

so as to equal the net countervailable subsidy.

Plaintiff here, for example, is protesting a mistake that occurred in the 2000 and 2001 liquidation of its 1997 entries.[22]

_____

[22]The Court notes that while Commerce argues that it cannot address the Customs errors because the errors were made with regard to entries from 1997, and Plaintiff brought the errors up in the 2001 review, Commerce does not make the somewhat more subtle argument that, if deemed liquidation occurred without any other action by Customs, the deemed liquidation took place in March 2000 and that, therefore, the error itself took place outside the period of review, and had Plaintiff desired to see this error remedied, it should have requested an administrative review for the year 2000. Assuming that active liquidations were made by Customs, one batch in September 2000 and one in February 2001, then only the second batch of liquidations occurred within the period of review. Such arguments might hold more weight were this case not dealing with a subsidy which Commerce itself had amortized over fourteen years. It appears somewhat disingenuous for Commerce to refuse to consider anything occurring outside the immediate period of review when Commerce itself has linked each period together through a fourteen-year amortization.

Rather, as Plaintiff points out in its brief, because Commerce is subject to the requirement under § 1671(a) to ensure that the amount countervailed is equal to the net subsidy received, in each period of review Commerce explicitly reviews the total amount of the non-recurring subsidy benefit and the amount allocated over each of the fourteen periods of review. Pl.'s Br. at 16. The chart issued by Commerce in connection with the Final Results for the 2001 Administrative Review which features the amount to be countervailed in each year of the fourteen-year amortization period, further demonstrates that Commerce views the periods of review as joined by the universal goal of assessing the total amount of benefit conferred over time. See Memorandum to The File, from Melanie Brown, Import Compliance Analyst, AD/CVD Enforcement, Group I, Office I, Re: Tenth (2001) Countervailing Duty Administrative Reviews of Pure Magnesium and Alloy Magnesium from Canada, Calculation of Final Results, Pl.'s Ex. 13 at 3 (Sept. 9, 2003). Therefore, in the case where a countervailing duty is imposed on a non-recurring subsidy,  because it is amortized over a period of years, Commerce should have the capacity to offset the excess countervailing duties imposed on Plaintiff's past entries.

Moreover, Commerce has previously recognized its authority to make an adjustment similar to the one requested here, so as to

If this Court were to accept Commerce's interpretation of the statute, it would require Plaintiff to have made its 1581(c) challenge in 1997, before Customs wrongly liquidated the entries at

_____

maintain the equality of the countervailing duties imposed with the amount of a non-recurring subsidy. Pl.'s Br. at 13. In the Issues and Decision Memorandum accompanying <u>Certain Pasta from Italy</u>, 66 Fed. Reg. 64,214, 64,215 (Dep't Commerce, Dec. 12, 2001) (final results of the fourth countervailing duty administrative review), though a recurring subsidy was at issue, Commerce explained:

> If Delverde were, for example, repaying a non-recurring grant that it received prior to the period of review, we would agree that any portion of that grant that had not already been countervailed should be reduced by the amount repaid. (We would do this without regard to the offset provision because, as Delverde argues, the repayment would be a reduction in the financial contribution and benefit.)

Memorandum to Bernard Carreau, Acting Assistant Sec'y for Imp. Admin., from Richard W. Moreland, Deputy Assistant Sec'y, Group I, Imp. Admin., <u>Issues and Decision Memorandum: Final Results of the 1999 Countervailing Duty Administrative Review of Certain Pasta from Italy</u>, Pl.'s Ex. 12 at Comment 7 (Dec. 4, 2001); <u>Certain Pasta from Italy</u>, 66 Fed. Reg. 64,214, 64,215 (Dec. 12, 2001) (incorporating the above-mentioned memorandum by reference).

Finally, this Court rejects Commerce's argument that the amortization schedule of a non-recurring subsidy is so analogous to federal tax laws concerning the depreciation of capital assets that the statute of limitations for amending prior years' income tax returns should apply here. Commerce argues that the logic of federal income tax law, where the fact that an asset depreciates over the course of a number of years does not allow a taxpayer to receive the benefit of one year's allocated depreciation in a later tax year, should be applied to the present situation. Def.'s Reply, at 11-12. However, the federal income tax rules exist so the taxpayer may not benefit from failure to file taxes, or otherwise improperly benefit. Yet, in the present situation, a mistake was made on the government's part that resulted in Plaintiff paying more than it owed. Therefore, to follow Commerce's analogy would force Plaintiff to pay for a mistake that it did not make.

issue.  This would mean that Plaintiff would never have been able to challenge Commerce's non-compliance with § 1671(a). Accordingly, Commerce's interpretation of § 1671(a) results in an unreasonable interpretation of the statute, and Chevron deference will not be given to Commerce's interpretation.

Therefore, although Commerce argues that it lacks the statutory authority to provide a remedy in this situation, its own interpretation of the Congressional purpose of § 1671(a) does not support its claim.[23]  Commerce's attempt at reconciling § 1675's period of review with the requirements of § 1671(a) will not be granted deference, as the interpretation renders § 1671(a) null and

---

[23]Liquidation does not prevent Commerce from remedying this situation.  Asociacion Colombiana de Exportadores v. United States, 916 F.2d 1571, 1573 (Fed. Cir. 1990), Juice Farms, Inc. v. United States, 68 F.3d 1344, 1346 (Fed.Cir. 1995), and United States v. A.N. Deringer, Inc., 66 C.C.P.A. 50, 52 & 55-56, 593 F.2d 1015, 1017 & 1020-21 (1979), cases cited by Commerce as precluding Plaintiff's relief because the entries were already liquidated, are inapposite.  Juice Farms and A.N. Deringer were not brought under § 1581(c) and stand merely for the proposition that there is no § 1581(a) jurisdiction over untimely filed Customs protests.  While it is true that Asociacion Colombiana de Exportadores may be cited for the proposition that liquidation is final, and no moneys may thereafter be recovered, Plaintiff here does not seek Customs' disgorgement of its overpayment.  Rather, it seeks to have the amortization schedule maintained by Commerce adjusted to reflect this overpayment.  Customs is in no way involved in such a remedy, and such remedy does not seek to undo the liquidation of the 1997 entries. The finality of the liquidation of the 1997 entries under 19 U.S.C. § 1514 is thereby not contested. Nor does Commerce's adjustment of the amortization schedule result in a "reconciliation" regarding the 1997 entries; rather than affecting those entries, the adjustment simply takes into account the fact of the particular amount of subsidy left to be amortized, and adjusts accordingly.

void with regard to administrative reviews of countervailing duty orders relating to one-time, non-recurring subsidies which are amortized over a period of years.

**CONCLUSION**

Because Plaintiff was not statutorily required to exhaust its extant Customs remedy, because the Court finds that it is not appropriate to require such exhaustion in this case, and because Commerce has the authority under § 1671(a) to ensure that the amount of the countervailing duty imposed is equal to the amount of the net countervailable subsidy, the Court denies Defendant's motion to dismiss. It is so ordered.

                                        /s/Donald C. Pogue
                                        Donald C. Pogue
                                             Judge

Dated: New York, New York
       October 12, 2004